United States District Court
Southern District of Texas
**ENTERED**
September 26, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| Marilyn A. Harmon Lyles, | § | |
| | § | |
| *Plaintiff,* | § | Case No. 4:21-cv-04258 |
| | § | |
| v. | § | |
| | § | |
| Kilolo Kijakazi, | § | |
| Acting Commissioner of Social | § | |
| Security, | § | |
| | § | |
| *Defendant.* | § | |

## <u>MEMORANDUM AND ORDER</u>

This is an appeal from an administrative ruling denying disability benefits.  The case was transferred to the undersigned judge upon consent of the parties.  Dkt. 18.  After carefully considering the parties' cross-motions for summary judgment, Dkt. 15, 16, Plaintiff Marilyn Harmon Lyles's response to Defendant's motion, Dkt. 21, the administrative record, Dkt. 9, and the applicable law, the Court grants Defendant's motion for summary judgment (Dkt. 16) and denies Lyles's motion for summary judgment (Dkt. 15).

## <u>Background</u>

Lyles worked as a customer service representative for a satellite television company for five years.  *See* R.32-34.  She briefly worked as a census enumerator.  R.32-33.  During that time, she provided childcare services for

friends and family.  R.32-33.  In October 2014, Lyles tripped and fell, injuring her right elbow, right knee, and lower back.  R.35-36, 43.  Her work as a customer service representative ended in May 2015, when she was let go.  R.35.

According to Lyles, she suffers from back and knee injuries, arthritis, chronic pain, and depression.  R.351.  To date, Lyles has been diagnosed with the following physical medical conditions: mild chronic lumbar radiculopathy, lumbar strain, lumbar myositis, lumbar myospasm, right elbow contusion, right knee contusion, intervertebral disc disease, herniation, right hip degenerative joint disease, meniscal tear of the right knee, osteoarthritis of the hip, ganglion cyst, foot strain, and chronic pain.  R.560, 1002-03, 1290, 1313.

Lyles also suffers from mental impairments.  She was diagnosed with major depressive disorder and generalized anxiety.  R.823 (Aug. 19, 2017 evaluation).  In May 2019, three of Lyles's family members passed away.  R.79.  She was prescribed clonazepam and referred for psychiatric treatment.  R.1243-44 (May 23, 2019 treatment notes).  As of August 22, 2019, Lyles had not begun that treatment.  R.79 (Lyles's testimony).  The last time that Lyles participated in counseling for depression was over twenty years ago, for a six-month period.  R.818.

Lyles filed for social security benefits under Title II and Title XVI of the Social Security Act, claiming a disability onset date of October 14, 2014.  R.293,

299.  After her claim was denied, Lyles requested and obtained a hearing before an administrative law judge (ALJ).  R.215.

At the hearing, Lyles testified that she has difficulty walking due to her obesity, relying on a cane for balance and support.  R.74, 81.  She asserted she had pain in her right knee and foot and swelling in her right leg.  R.74-76, 78.  She also stated that she cries all day almost every day, does not leave her room often, and is too depressed to drive.  R.80.

The ALJ found that Lyles met the insured status requirements and had not engaged in substantial gainful activity since October 14, 2014—the date on which Lyles fell and injured herself.  R.12.  The ALJ also concluded that Lyles has several severe physical impairments: obesity, degenerative disc disease, arthritis, degenerative joint disease, and chronic pain.  R.12.  Upon analyzing Lyles's medical records, however, the ALJ concluded that Lyles's anxiety and major depressive disorder are not severe.  R.13.

After finding that Lyles's physical impairments do not meet or medically equal a listed impairment, the ALJ turned to formulating Lyles's residual functional capacity ("RFC").  In addition to detailing relevant medical records, the ALJ evaluated the persuasiveness of numerous medical opinions regarding Lyles's physical and mental impairments.  *See* R.17-19.  Based on those determinations, the ALJ concluded that Lyles can perform "light work," subject to the following limitations:

3

> [S]he cannot climb ropes, ladders or scaffold[s].  She can never kneel or crawl.  She can occasionally[] stoop and crouch.  She can only work on ground level, even surfaces and not around moving machinery. She will need to alternate sitting and standing at will. She requires an assistive device (cane) and can lift and carry items in her non-dominant hand.  The assistive device is for balance and to stand.

R.15.  Based on this RFC, the ALJ found that Lyles can perform her past relevant work as a customer service representative, as well as other positions that exist in significant numbers in the national economy, namely the positions of office helper, routine clerk, and information clerk.  R.19-21.  Therefore, the ALJ determined that Lyles does not qualify as disabled under the Social Security Act.  R.21.

Lyles appealed the ALJ's determination to the Social Security Appeals Council, which denied review.  R.1.  This appeal followed.  Dkt. 1.

## **Standard of Review**

A reviewing court assesses the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence."  *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (internal quotation marks omitted).  "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion.'"  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  It is "more than a

scintilla, but it need not be a preponderance." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)).

When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). But judicial review must not be "so obsequious as to be meaningless." *Brown*, 192 F.3d at 496 (internal quotations omitted). The court must scrutinize the record as a whole, taking into account whatever fairly detracts from the weight of evidence supporting the Commissioner's findings. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

## Analysis

Lyles contends that the ALJ erred when evaluating the record evidence regarding her mental and physical impairments. Dkt. 15 at 8-24. For both categories, Lyles argues that the ALJ failed to properly evaluate certain medical opinions that reflect she has greater limitations on her ability to work. *Id.* at 14-24. The Commissioner, however, responds that the ALJ adequately explained the basis for his decision and that substantial evidence supports it. Dkt. 16-1 at 11-12. These contentions are addressed in turn.

## I.   <u>Legal framework</u>

"The Commissioner uses a sequential, five-step approach to determine whether a claimant is ... disabled: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)) (footnote omitted).   Before moving from step three to four, the ALJ determines the claimant's RFC, which is used to evaluate steps four and five.  *Id.* at 776 n.2 (quoting 20 C.F.R. § 404.1520(a)(4)).

"Under this five-step approach, if the Commissioner determines at a prior step that the applicant is or is not disabled, the evaluation process stops ...." *Id.* at 776 (citing 20 C.F.R. § 404.1520(a)(4)).  The claimant bears the burden of proof at the first four steps. *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017).  At the fifth step, the burden of proof shifts to the Commissioner "to establish the existence of other available substantial gainful employment that a claimant can perform." *Id.* at 753-54.

6

II.   **Substantial evidence supports the ALJ's determinations regarding Lyles's mental impairments.**

Lyles's challenges to the administrative findings about her mental impairments are intertwined, although they target multiple steps in the disability analysis.  First, Lyles disputes the ALJ's analysis and conclusions at step two: whether Lyles suffers from severe mental impairments.  Dkt. 15 at 13.  This argument hinges on Lyles's assertion that the ALJ erred by discounting certain medical opinions while giving undue weight to another.  *Id.* at 13-17.  Based on that premise, and regardless of whether her mental impairments qualify as "severe," Lyles also maintains that the ALJ improperly weighed the medical opinions by failing to include those impairments in her RFC.  *Id.* at 17.  These contentions are addressed in turn.

A.   **The ALJ properly evaluated medical opinions regarding Lyles's mental impairments.**

At step two, the ALJ found that Lyles's "anxiety and major depressive disorder, considered singly and in combination, do not cause more than minimal limitation in [Lyles's] ability to perform basic mental work activities and are therefore non-severe."  R.13.  In doing so, the ALJ analyzed the governing "paragraph B" criteria to determine the mental impairment's impact on four functional areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining

pace; and adapting or managing oneself. *See id.*; 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; *id.* §§ 404.1520a(c)(3), 416.920a(c)(3).

According to Lyles, the ALJ gave improper weight to the opinions of a State agency psychologist—Casey Sharpe, Pys.D., R.135-38, 146-47, 172-73—and a State evaluating psychologist—Frank Fee, Ph.D., R.816-23,[1] while giving greater weight to the opinions of a non-examining psychiatrist, Nancy Tarrand, M.D., R.40-43, 943, who testified at the hearing.

### 1. Framework for evaluating medical opinions

When assessing opinions of medical experts, the ALJ generally gives more weight to the medical opinion of a physician who has examined the claimant, as opposed to those who have not. 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1); *see also Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017) ("[T]he regulations make clear that opinions from examining physicians must be considered."). ALJs must consider administrative findings of fact made by state agency consultants as the opinions of non-examining physicians, and explain the weight given to these opinions. SSR 96–6P, 1996 WL 374180 at *1. ALJs, however, "are not required to adopt any prior administrative medical findings." 20 C.F.R. §§ 404.1513a, 416.913a. "The ALJ is free to reject the

---

[1] Both the parties and the ALJ attributed the State consultative examination to Dr. Fee. *See* R.18 (ALJ); Dkt. 15 at 14 (Lyles); Dkt. 16-1 at 5 (Commissioner). But the examination was done by Jennifer Norten, Ph.D. R.816-23. To avoid confusion, however, the Court refers to this medical opinion as Dr. Fee's.

opinion of any physician when the evidence supports a contrary conclusion."
*Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (per curiam) (quoting
*Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)).  Above all else, "the
ALJ has sole responsibility for determining a claimant's disability status."  *Id.*
(quoting *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990)).

### 2.   Dr. Sharpe's opinion

Lyles emphasizes Dr. Sharpe's conclusions that Lyles's mental
impairments are "more than non-severe" even if they are "not severe enough
to meet or equal a listing" under step three.  Dkt. 15 at 14 (quoting R.135).  But
ample evidence supports the ALJ's contrary conclusion that Lyles's anxiety
and depression are not severe.

Whether a mental impairment qualifies as "severe" depends on its
impact on four functional areas: (1) understanding, remembering, or applying
information; (2) interacting with others; (3) concentrating, persisting, or
maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. Pt. 404,
Subpt. P, App. 1 § 12.00; *id.* §§ 404.1520a(c)(3), 416.920a(c)(3).  If a claimant's
limitations in any given area are no more than mild, the ALJ "will generally
conclude that an impairment is not severe, unless the evidence otherwise
indicates that there is more than a minimal limitation in [the claimant's]
ability to do basic work activities ...."  *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1).

Consistent with Dr. Sharpe's findings, Lyles does not dispute that she has only mild impairment in the second domain—ability to interact with others.  *See* R.136; *see also* R.173 (finding no "social interaction limitations"). But Dr. Sharpe concluded that Lyles has moderate limitations in three other domains: understanding and memory; ability to sustain, concentrate, and persist; and ability to adapt.  R.136, 138.  The ALJ gave those determinations "little weight."  R.18.  Substantial record evidence supports that conclusion.

Contrary to Lyles's contention, the ALJ correctly noted that Lyles had not been receiving mental health treatment.  *See* R.18.  During the August 2017 examination by Dr. Fee, which Dr. Sharpe cited, R.137, Lyles stated that she had not seen a mental health professional for about twenty years.  R.818. Lyles's testimony confirmed this fact.  *See* R.79 (testifying that she saw a psychiatrist "a long, long time ago").  Lyles's testimony that she is taking medication for depression, R.79, conflicts with recent records indicating that she was not taking the medication, nor had she seen the psychiatrist to whom she had been referred.  R.1239, 1241 (July 1, 2019 record); *see also* R.818 (Lyles informing Dr. Fee that she discontinued Prozac "a long time ago").

The ALJ's further statement that the only references to depression in Lyles's records relate to multiple deaths in her family is not entirely accurate. R.18.  While Lyles indicated the deaths of her brother in June 2014 and her son in May 2019 greatly impacted her, R.79, 818, 1242, some records outside

those timeframes (and apart from her disability application) mention complaints of depression.  R.780 (Feb. 9, 2017 record).

Nevertheless, the ALJ marshaled other evidence that undermines Dr. Sharpe's findings. *See* R.13.  The evaluation by Dr. Fee—on which Dr. Sharpe relied, R.137—concluded that Lyle's "concentration and attention appeared essentially normal."   R.821; *see also* R.13 (ALJ's opinion, citing Ex. 6F). Records pre-dating that evaluation include similar observations, despite also mentioning Lyles's complaints of depression or memory loss. *See* R.1049-50 (Sept. 1, 2016 record, noting that "[a]ttention span and concentration are normal"); R.497, 499 (Oct. 27, 2016 record, noting Lyles's complaints of memory loss and depression, but finding that her attention span and concentration were "normal"); *see also* R.13 (citing these records as Ex. 11F and 2F).  Lyles herself stated, when applying for disability benefits, that she can pay attention for one to two hours at a stretch.  R.372.

Moreover, Dr. Fee's assessment indicated that Lyles can drive and handle her own medical care.  R.817; *see also* R.13 (citing Ex. 6F).  Even Dr. Sharpe found that Lyles was not significantly limited in her ability to work in coordination with or in proximity to others without being distracted.  R.147. All these records provided a sufficient basis for the ALJ to reject Dr. Sharpe's conclusions that Lyles has severe limitations in the domains of understanding,

remembering, or applying information, and in her ability to concentrate, persist, or maintain pace.

The same is true regarding Dr. Sharpe's opinion regarding Lyles's ability to adapt or manage herself. As the ALJ noted, Lyles's allegations that she has difficulty bathing and dressing conflict with her admission that she can care for her own children. *See* R.13 (discussing R.368). This is bolstered by other records describing Lyles as well-groomed and her appearance as normal. R.13 (citing R.820). Yet other records indicate that Lyles showed no anxiety. *See, e.g.*, R.910 (Oct. 17, 2014); R.904 (Nov. 14, 2014); R.895 (Dec. 14, 2015); R.891 (Feb. 22, 2016); R.887 (Mar. 16, 2016); R.882 (June 6, 2016); R.879 (Sept. 12, 2016); R.837 (Mar. 27, 2017); R.840 (Apr. 24, 2017); R.848 (Oct. 2, 2017); *see also* R.499 (Oct. 10, 2016 record, finding "normal mood and affect" despite Lyles's complaint of depression and mood disorders). And as recently as April 2019, Lyles denied having depression. R.1252. The medical evidence supports the ALJ's decision to assign "little weight" to Dr. Sharpe's opinions and conclude instead that Lyles's mental impairments are not severe.

### 3.    Dr. Fee's and Dr. Tarrand's opinions

Lyles complains the ALJ gave only "some weight" to Dr. Fee's opinion while finding Dr. Tarrand's opinion more persuasive. Dkt. 15 at 16. According to Lyles, Dr. Fee's opinion deserved more weight because Dr. Fee examined

Lyles, whereas Dr. Tarrand did not.  *Id.*; *see also* 20 C.F.R. §§ 404.1527(c), 416.927(c)(1) (examining sources generally given more weight).

"[A]lthough the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981); *see also* Dkt. 16-1 at 11 (Commissioner's citation to this case).  Put another way, "[t]he opinion of an examining doctor must be considered[] but need not be given controlling weight." *Henderson v. Colvin*, 520 F. App'x 268, 276 (5th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)).

The ALJ explicitly considered both Dr. Fee's and Dr. Tarrand's opinions. Regarding Dr. Fee, the ALJ gave "some weight" to Dr. Fee's opinion that Lyles "could understand, carry out and remember basic instructions" and that "she was struggling to deal with normal pressures in a competitive work setting." R.18.  On the other hand, the ALJ gave "[g]reat weight" to Dr. Tarrand's opinion that Lyles was only mildly impaired, finding that opinion consistent with the medical record as a whole.[2]  R.19; *see also* R.42 (Dr. Tarrand's

---

[2] The ALJ also noted that Dr. Tarrand "had the benefit of hearing [Lyles's] testimony at the hearing.  R.19.  Lyles disputes that finding because Lyles did not testify about the impact of her mental impairments until after Dr. Tarrand testified.  Dkt. 15 at 15-16.  This issue is immaterial, given that Lyles's medical record, standing alone, provided a sufficient basis for the ALJ to find Dr. Tarrand's opinion persuasive.

testimony).  Indeed, medical evidence supports the ALJ's conclusion that Lyles had no severe mental impairments.  *See supra* Part II.A.2.

Lyles, however, claims that Dr. Fee's opinion merited greater weight because it is supported by Dr. Sharpe's medical opinion.  Dkt. 15 at 16-17.  This is circular because Dr. Sharpe's conclusions were heavily informed *by Dr. Fee*'s observations—not the other way around.  *See* R.137.  Regardless, the psychological symptoms noted in Dr. Fee's report do not comport with many other records where Lyles reported, or various treating physicians noted, no such symptoms.  *See, e.g.*, R.910 (Oct. 17, 2014); R.904 (Nov. 14, 2014); R.895 (Dec. 14, 2015); R.891 (February 22, 2016); R.887 (March 16, 2016); R.882 (June 6, 2016); R.879 (Sept. 12, 2016); R.837 (March 27, 2017); R.840 (Apr. 24, 2017); R.848 (Oct. 2, 2017); R.1001 (Apr. 13, 2018); R.1252 (Apr. 3, 2019); R.1301 (May 23, 2019).  Other findings by Dr. Fee indicate that Lyles has only a slight impairment to her memory, which comports with other medical evidence.  *Compare* R.821 (Dr. Fee's report), *with, e.g.*, R.1280 (Feb. 10, 2016), R.1269 (Sept. 1, 2016), R.1254 (April 3, 2019), 1240 (July 1, 2019).

Also, Dr. Fee—unlike Dr. Tarrand—did not review Lyles's entire medical record.  This is a significant consideration when assigning weight to medical opinions.  *See* 20 C.F.R.  §§ 404.1527(c)(6), 416.927(c)(6) (ALJ must consider "the extent to which a medical source is familiar with the other information in [the claimant's] case record"); *see also Rodriguez v. Shalala*, 1994 WL 499764,

at *2 (5th Cir. Aug. 25, 1994) (level of deference to the opinion of a non-treating examining physician who examined the claimant only once "may fall correspondingly").

Here, Dr. Fee's report concedes that "[m]edical records were not reviewed at time" of his evaluation.  R.817.  In contrast, Dr. Tarrand based her opinions on a review of Lyles's entire medical record.   Her testimony explicitly addressed many specific records, including Dr. Fee's examination and notes by Lyles's treating physicians.  *See* R.41-42 (discussing R.818-23; 1239, 1254).  Dr. Tarrand noted that the increased severity in Lyles's depressive symptoms corresponded with losses in Lyles's family.  R.41.  Based on Lyles's medical history, Dr. Tarrand concluded that Lyles has only mild impairments to the four functional areas.  R.42-43.  Given the entire medical record, the ALJ was entitled to find Dr. Tarrand's opinion more persuasive than Dr. Fee's.

At bottom, it is an ALJ's job to determine what weight to give medical opinions.  *See Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).  The ALJ properly did so here when relying more heavily on Dr. Tarrand and only slightly on Dr. Fee.

### B. Substantial evidence supports the ALJ's decision to exclude mental limitations from the RFC.

Even if Lyles's mental impairments are not severe, Lyles nonetheless contends that the ALJ improperly failed to include those non-severe

limitations when formulating the RFC.  Dkt. 15 at 17; *see also id.* at 13 (citing

20 C.F.R. §§ 404.1545(e), 416.945(e)).  The Commissioner, however, responds

that the regulations do not require the ALJ to assess a claimant's mild

impairments at this step of the analysis.  Dkt. 16-1 at 9.  Although the

Commissioner's position is incorrect, the ALJ nonetheless fulfilled his

obligation to consider Lyles's mental impairments when resolving the

limitations on Lyles's ability to work.

> 1.   <u>An ALJ must consider non-severe impairments when determining a claimant's RFC.</u>

Before step four in the disability evaluation process, the ALJ must

determine a claimant's RFC—the "most the claimant can still do despite [her]

physical and mental limitations." *Perez v. Barnhart*, 415 F.3d 457, 462 (5th

Cir. 2005) (citing 20 C.F.R. § 404.1545(a)(1)).  When forming the RFC, the ALJ

is "required to consider the combined effects of all impairments without regard

to whether any such impairment, if considered separately, would be of

sufficient severity." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).  "While a

'not severe' impairment(s) standing alone may not significantly limit an

individual's ability to do basic work activities, it may—when considered with

limitations or restrictions due to other impairments—be critical to the outcome

of a claim." *Wells v. Kijakazi*, 2022 WL 17548603, at *3 (S.D. Tex. Sept. 28,

2022) (quoting SSR 96-8p, 1996 WL 374184, at *5).

The Commissioner argues that the regulations do not require an ALJ to assess a claimant's mild impairments when determining her RFC.  Dkt. 16-1 at 9.  Relying on Social Security Ruling 96-8p, the Commissioner contends that severity determinations at step two are not RFC assessments that should affect a claimant's RFC.  Dkt. 16-1 at 8.

The referenced Social Security ruling refutes the Commissioner's position.  *See, e.g.*, *Wells*, 2022 WL 17548603, at *4 (holding that the ALJ erred by failing to consider if the claimant's mild mental impairments affected her RFC); *Papillion v. Kijakazi*, 2022 WL 17548604, at *4 (S.D. Tex. Sept. 30, 2022) (same).  That ruling states, explicitly:

> In assessing RFC, the adjudicator *must consider* limitations and restrictions imposed by all of an individual's impairments, *even those that are not "severe."* While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim.

SSR 96-8p, 1996 WL 374184, at *5 (emphasis added); *see also, e.g.*, *Papillon*, 2022 WL 17548604, at *4 (quoting this language).  This guidance comports with regulations directing an ALJ to consider all medically determinable impairments when assessing a claimant's RFC, "including [a claimant's] medically determinable impairments that are not severe ...." 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) (internal quotations omitted).   Both the

17

regulations and prior administrative guidance confirm that an ALJ must consider even non-severe limitations when formulating the RFC.

> ### 2.   The ALJ considered Lyle's mental impairments when determining her RFC.

Despite the Commissioner's flawed analysis, and contrary to Lyles's contentions, the ALJ's decision reflects that he did consider Lyle's mental impairments in the RFC evaluation.   "[C]onsideration does not require incorporation." *Mendoza v. Saul*, 2021 WL 4555812, at *7 (S.D. Tex. July 21, 2021), *adopted by* 2021 WL 4555197 (S.D. Tex. Oct. 5, 2021).   "The ALJ is not required to incorporate limitations in the RFC that she did not find to be supported by the record." *Liguez v. Kijakazi*, 2021 WL 4943321, at *8 (S.D. Tex. Aug. 11, 2021), *adopted by* 2021 WL 4941997 (S.D. Tex. Oct. 22, 2021) (citing *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)).

Here, the ALJ stated that his RFC analysis incorporates his discussion of Lyles's mental impairments under the "paragraph B" criteria in step two. *See* R.14 ("[T]he following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis.").   And the ALJ explicitly considered and weighed the opinions of Dr. Fee, Dr. Sharpe, and Dr. Tarrand in the portion of the opinion addressing Lyles's RFC.   *See* R.18; *see also supra* Parts II.A.2-3.  The fact that the ALJ did not reprise all the evidence here "does not mean that he failed to

18

consider all of the other evidence in the record." *See Brunson v. Astrue*, 387 F. App'x 459, 461 (5th Cir. 2010).

The cases Lyles cites are distinguishable. *See* Dkt. 21 at 3-4 (citing *Gonzales v. Berryhill*, 2017 WL 3492215 (N.D. Tex. Aug. 15, 2017); *Tusken v. Astrue*, 2010 WL 2891076 (N.D. Tex. May 25, 2010), *adopted by* 2010 WL 2891075 (N.D. Tex. July 20, 2010); *Gary P. v. Saul*, 2021 WL 3518534 (N.D. Tex. July 19, 2021), *adopted by* 2021 WL 3516238 (N.D. Tex. Aug. 10, 2021)). In *Gonzales*, the ALJ applied the wrong legal standard when determining that the claimants' mental impairments were not severe. *See* 2017 WL 3492215, at *4. The ALJ in *Tusken* explicitly and improperly excluded non-severe limitations, categorically, when formulating the RFC, thereby indicating that those limitations were not considered. *See* 2010 WL 2891076, at *11-12. Moreover, the evidence indicated that the ALJ erred when finding those limitations to be non-severe. *Id.* at *10. And in *Gary P.*, the ALJ's RFC analysis omitted any discussion of the claimant's non-severe mental impairments. *See* 2021 WL 3518534, at *5.

Unlike those decisions, the ALJ in this case applied the correct legal standards, both when determining that Lyles's mental impairments were not severe, and when evaluating the impact of those impairments on her RFC. The ALJ also discussed and weighed competing medical opinions about Lyles's mental impairments when concluding that those impairments do not affect

19

Lyles's RFC.  And as noted above, substantial evidence supports the ALJ's assessment of the medical evidence.  *See supra* Parts II.A.2-3.  The ALJ had a sufficient basis for declining to include any mental limitations in the RFC.

### III.   Substantial evidence supports the ALJ's determination that Lyles's physical impairments do not foreclose her ability to perform light work.

Lyles also contends that the ALJ erred when determining the impacts of her physical impairments on her ability to work.  Dkt. 15 at 9-13, 18-24.  As the ALJ concluded, Lyles suffers from severe obesity, degenerative disc disease, arthritis, degenerative joint disease, and chronic pain.  R.12.  When forming the RFC, the ALJ determined that Lyles could perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), subject to several restrictions.  Under the RFC, Lyles (1) cannot climb ropes, ladders, or scaffolds; (2) cannot kneel or crawl but can occasionally stoop and crouch; (3) must work on ground-level, even surfaces, and cannot work around moving machinery; (4) needs to alternate sitting and standing at will; (5) requires an assistive device, specifically a cane, to balance and stand; and (6) can lift and carry items in her non-dominant hand.  R.15.

Lyles argues that this RFC is not supported by the evidence.  Dkt. 15 at 9.  Apart from highlighting certain medical records, *id.* at 9-13, Lyles disputes the ALJ's rationale for giving little weight to the opinion of Dr. David Spinks, a treating physician, while awarding great weight to the opinion of Dr.

Anigbogu, a non-examining expert who testified at the hearing.  *Id.* at 18-24.
The Court is not persuaded.

### A.     Standard for analyzing opinions of treating physicians

Under the regulations governing Lyles's application, which was filed
before March 27, 2017,[3] *see* R.293, 299, "a treating physician's opinion on the
nature and severity of a patient's impairment will be given controlling weight
if it is 'well-supported by medically acceptable clinical and laboratory
diagnostic techniques and is not inconsistent with ... other substantial
evidence.'" *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (quoting *Martinez
v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995)); *see* 20 C.F.R. §§ 404.1527(c)(2),
416.927(c)(2) (applicable to claims filed before March 26, 2017).

Even under those regulations, a "treating physician's opinions are not
conclusive … [and] may be assigned little or no weight when good cause is
shown." *Newton*, 209 F.3d at 455-56.  Good cause exists "where the treating
physician's evidence is conclusory, is unsupported by medically acceptable
clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by
the evidence." *Id.*; *see also* 20 C.F.R. §§ 404.1527(c); 416.927(c).  Here, the ALJ
had good cause to reject Dr. Spinks's opinion and credit Dr. Anigbogu's.

---

[3] The Commissioner notes, and the Court agrees, that Lyles cites the incorrect
regulations that apply to claims filed *after* March 27, 2017.  *See* Dkt. 15 at 20 (Lyles
citing inapplicable regulation); Dkt. 16-1 at 12 n.2 (Commissioner's brief).  The ALJ
applied the correct versions.  *See* R.15 (citing relevant regulations).

**B.    The ALJ did not err when weighing the opinions of Dr. Spinks and Dr. Anigbogu.**

Lyles emphasizes an RFC that her treating physician, Dr. Spinks, prepared on August 19, 2019.  Dkt. 15 at 18 (citing R.1313-17).  The ALJ gave that opinion little weight.  R.18.  Instead, the ALJ gave "great weight" to the opinion of Dr. John C. Anigbogu, who specializes in pain management and rehabilitative medicine.  R.18-19; *see also* R.1307 (Dr. Anigbogu's resume).  Lyles maintains these findings were improper.  *See* Dkt. 15 at 20-24.

1.    <u>The ALJ could properly conclude that Dr. Spinks's check-box opinion was unsupported by the evidence.</u>

Dr. Spinks first treated Lyles on November 18, 2014, saw her intermittently in 2015 and 2016, and once each year in 2017 through 2019.  R.803, 1134, 1130, 1107, 1105, 1079, 1076, 623, 554, 503, 1010, 1003, 1304.  Dr. Spinks's treatment notes documented Lyles's chronic pain and problems with her right knee, right foot, right elbow, and low back.  *See e.g.*, R.503-05.  Over the years, Dr. Spinks referred Lyles to physical therapy, chiropractic treatment, and pain management, while also prescribing medications, lumbar injections, and right knee injections.  R.1134, 1076, 1064, 1059, 1011, 1006.

In August 2019, Dr. Spinks opined that Lyles's physical impairments (1) would "interfere with her attention and concentration needed to perform even simple work tasks, constantly"; (2) rendered Lyles "incapable of even 'low stress' jobs"; (3) limited her to sitting, standing, and walking less than two

22

hours each workday; and (4) limited her to lifting less than ten pounds, on rare occasion. R.1314-15. These findings are reflected in a check-box form. *See id.*

The Commissioner notes, Dkt. 16-1 at 15, and the Court agrees, that the Dr. Spinks's findings are conclusory. Opinions in "questionnaire format[s] typif[y] brief or conclusory testimony." *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (per curiam) (internal quotations omitted). The lack of meaningful explanation underlying Dr. Spinks's findings permitted the ALJ to reject them. *See Simmons v. Colvin*, 635 F. App'x 512, 515 (5th Cir. 2015) (holding that "the ALJ rightly discounted the conclusory ratings provided by" claimant's treating physician).

Regardless, the ALJ noted inconsistencies between Dr. Spinks's August 2019 opinions and his prior findings. As the ALJ observed, Dr. Spinks previously concluded that Lyles could perform light-duty work. R.18 (citing Dr. Spinks's Jan. 19, 2015 letter, R.1135-38). Other records prepared by Dr. Spinks from December 2014 through July 2016 indicate that Lyles could return to work on a light restricted duty, as follows: four hours maximum of work per day with two or three stretch breaks per eight hours; no climbing stairs or ladders; no carrying or lifting heavy objects; no kneeling or squatting; no bending or stooping; no pushing or pulling; and twisting is limited to two hours per day. *See* R.1147, 1152, 1155-59, 1164-66. No standing or sitting restrictions were noted. *Id.*

23

Yet Dr. Spinks's August 2019 form states, among other things, that Lyles can only sit for 90 minutes at a time, stand for five minutes at a time, and stand/walk less than two hours each workday. R.1314-15. According to this latest form, Lyles needs a job that allows her to shift between sitting, standing, or walking. R.1315. And with prolonged sitting, Lyles purportedly needs to elevate her legs. *Id.* According to Dr. Spinks's 2019 form, Lyles also cannot lift ten pounds or more. *Id.*

Substantial evidence provided good cause for discounting Dr. Spinks's August 2019 opinions. The ALJ observed that a physical examination by a different physician just a few months earlier found that Lyles had full muscle strength in all major muscle groups. R.16 (citing April 2019 record, R.1254). Testing revealed that her range of motion and joint contracture were within normal limits. *See id.* The same record indicates that Lyles's gait was normal. *Id.* Notably, the record indicates that Lyles denied having joint pain, back problems, joint stiffness, restricted motion, or weakness at that time. R.1252.

Other medical evidence cited by the ALJ further undermines Dr. Spinks's 2019 opinion. As the ALJ noted, Lyles's lumbar radiculopathy was mild. R.17 (citing May 2016 EMG study, R.1275). Treatment notes indicate that her condition improved after receiving physical therapy and injections from March 2016 through October 2017. *See e.g.*, R.885, 1059, 847.

24

As for Lyles's right knee pain, the ALJ acknowledged Dr. Spinks's report about a tear in Lyles's meniscus, but the ALJ noted accurately that examinations found no acute bony abnormalities, and treatment had improved Lyles's condition.  *See* R.17; R.799 (Dec. 18, 2014 radiology record); R.760 (December 7, 2016 record noting knee injections "have been beneficial"). Despite Dr. Spinks's observation in May 2019 that Lyles had crepitation in the knee, R.1301, a different medical provider found no crepitus just one month later, R.1246.  *See* R.16-17 (discussing these records); R.18 (emphasizing same records when evaluating Dr. Spinks's opinions).  Other evidence reflects that Lyles responded well to treatment from November 2016 through October 2017. R.846, 838, 841, 849.  Such an impairment "that can be reasonably remedied or controlled by medication or treatment is not disabling and does not affect RFC."  *Willis v. Berryhill*, 2017 WL 1153956, at *17 (S.D. Tex. Mar. 28, 2017) (citing *Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1998) (per curiam)).

Moreover, the ALJ credited the testimony of the testifying medical expert, Dr. Anigbogu, who stated that he did not believe Lyles required surgery to repair the meniscal tear and relieve her pain.  R.56; *see also infra* Part III.B.2 (addressing ALJ's persuasiveness findings regarding Dr. Anigbogu).  Dr. Anigbogu opined that surgery would not eliminate the meniscus tear.  R.53.  According to Dr. Anigbogu, aspirating the knee and injecting it with steroids would provide greater relief than surgery.  R.57.

The record also supports the ALJ's conclusion that Lyles's foot pain did not require further limitations in her RFC.  R.17.  Dr. Spinks observed in May 2019 that Lyles had moderately severe foot pain.  R.1303.  But a nurse practitioner who treated Lyles the same month found no tenderness, swelling, or edema.  R.1246.  And one month earlier, Lyles denied having joint pain, muscle cramps, muscle weakness, or restricted motion.  R.1252 (April 3, 2019 notes).  Notably, the RFC as formulated accommodates Lyles's foot pain (and complaints of knee and back pain) by including a sit-stand option.  *See* R.15.

At bottom, the findings regarding Dr. Spinks reflect the ALJ's proper exercise of its duty to "determine the credibility of medical experts … and to weigh their opinions and testimony accordingly."  *Scott*, 770 F.2d at 485.  "Conflicts in the evidence are for the [ALJ] and not the courts to resolve."  *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).  The ALJ's findings about Dr. Spinks's opinions provide no basis for reversal.

### 2.   Record evidence supports Dr. Anigbogu's opinion that Lyles's lumbar radiculopathy is not painful.

As her final argument, Lyles challenges the ALJ's decision to give "great weight" to Dr. Anigbogu's opinion that Lyles could perform light work, subject to certain restrictions that ultimately were included in the RFC.  *See* Dkt. 15 at 20-24 (discussing Dr. Anigbogu's testimony, R.62-64); R.18; *see also* R.47 (Dr. Anigbogu's conclusions).  According to Lyles, Dr. Anigbogu's opinion that

her lumbar radiculopathy did not cause pain is "not supported by scientific, technical, or specialized knowledge." Dkt. 15 at 21.

Lyles's citations to sources discussing lumbar radiculopathy, in the abstract, do not negate the record evidence supporting the ALJ's determination that Dr. Anigbogu's opinion was persuasive. Dr. Anigbogu considered Lyles's back pain to be a severe impairment. R.51. Lumbar radiculopathy, however, was only one of numerous back problems reflected in Lyles's medical records, which also included lumbar strain, R.815, herniation, R.1290, lumbar foraminal stenosis, R.1185, degeneration of lumbar disc, R.1002, and degenerative disc disease, R.1011. Given her multifarious back issues, Lyles's radiculopathy—which her physicians classified as mild—may not be the cause of Lyles's pain. *See* R.1275. In any event, Dr. Anigbogu's recognition that Lyles's back conditions cause pain makes it immaterial whether the pain stems from lumbar radiculopathy or some other condition.

The ALJ also emphasized Dr. Anigbogu's specialized expertise on this topic. This is a proper factor to consider when assigning weight to a medical opinion. 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5) (giving "more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty"). Dr. Anigbogu is a board-certified specialist in pain management and rehabilitative medicine. R.18-19; *see also* R.1307 (Dr. Anigbogu's resume). He served as a professor of physical medicine and rehabilitation and maintains

an active practice in that field.  R.1307.  Dr. Anigbogu also served as medical

director of the acute-care rehabilitation unit of a hospital for several years.  *Id.*

Finally, Dr. Anigbogu had the benefit of reviewing all the evidence of

record, was familiar with the pertinent regulations, and had experience

evaluating disability claims under the Social Security Act and its regulations.

R.19.    Those  considerations  bolstered  the  ALJ's  determination  that

Dr. Anigbogu's opinion merited great weight.  *See* 20 C.F.R. §§ 404.1527(c)(6),

416.927(c)(6)  (noting  that  "understanding  of  [Social  Security]  disability

programs"  and  a  medical  source's  familiarity  with  "other  information  in

[a claimant's] case record" are relevant to the weight given to a medical

opinion).  The Court concludes that the ALJ properly weighed the expert

opinions, including Dr. Anigbogu's.

## Conclusion

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for

Summary Judgment (Dkt. 15) and **GRANTS** Defendant's Motion for Summary

Judgment (Dkt. 16).   It is therefore **ORDERED** that the decision of the

Commissioner of Social Security is **AFFIRMED**.

Signed on September 26, 2023, at Houston, Texas.

_____

Yvonne Y. Ho

United States Magistrate Judge